FILED
2015 Jan-07  AM 10:53
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| SONDRA KEETON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) Civil Action No. CV-13-S-1925-NE |
| BIG LOTS STORES, INC., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Sandra Keeton, asserts claims against her employer, Big Lots Stores, Inc. ("Big Lots"), for sexual harassment, hostile work environment, and retaliation, pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 *et seq*.[1]  The case currently is before the court on Big Lots' motion for summary judgment.[2]  Upon consideration of the briefs and evidentiary submissions, the court concludes that the motion is due to be granted.

## I.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In

---

[1] *See* doc. no. 9 (Second Amended Complaint).

[2] Doc. no. 16.

other words, summary judgment is proper "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)).  Inferences in favor of the non-moving party are not unqualified, however.  "[A]n inference is not reasonable if it is only a guess or a possibility, for such an inference is not based on the evidence, but is pure conjecture and speculation." *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1324 (11th Cir. 1983) (alteration supplied).  Moreover,

> [t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is *material* to an issue affecting the outcome of the case.  The relevant rules of substantive law dictate the materiality of a disputed fact.  A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

*Chapman*, 229 F.3d at 1023 (quoting *Haves*, 52 F.3d at 921) (emphasis and alteration supplied).  *See also Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 251-52 (1986) (asking "whether the evidence presents a sufficient disagreement to require

2

submission to a jury or whether it is so one-sided that one party must prevail as a matter of law").

## II. SUMMARY OF FACTS[3]

Plaintiff was a part-time employee at the Big Lots store in Florence, Alabama, from 2005 to 2013.[4]  The Big Lots Associate Handbook contains the company's Harassment-Free Environment Policy, which includes the following statements:

> We intend to maintain an environment in which all associates can perform their duties free of harassment and discrimination.  If you believe you have been the subject of harassment, you should report the alleged act to your Manager or to your Regional Human Resources manager (RHRM) immediately so the problem can be corrected.  Some

---

[3] The brief filed by plaintiff in opposition to Big Lots' motion for summary judgment did not respond, paragraph-by-paragraph, to any of the proposed findings of facts stated by Big Lots in its brief.  *See* doc. no. 22 (Response in Opposition to Summary Judgment).  Accordingly, all of defendant's proposed facts are deemed admitted for summary judgment purposes.  *See* doc. no. 8 (Uniform Initial Order), at 15-16.  Additionally, many of the proposed undisputed facts in plaintiff's brief discuss behavior directed at another employee, Lisa Wilson, by an Assistant Manager named W.C. Collinsworth, whose actions are discussed *infra*, in the text accompanying notes 7 *et seq*.  *See* doc. no. 22 (Response in Opposition to Summary Judgment), at 5-8 (Proposed Facts 10-20).  Ms. Wilson also filed a suit against Big Lots.  *See Lisa Wilson v. Big Lots Stores, Inc.,* Civil Action No. 5:13-cv-1008-CLS.  The harassment allegedly suffered by Ms. Wilson is not relevant to the claims asserted by plaintiff in this case.

[4] *See* doc. no. 18-2 (Exhibits to Plaintiff's Deposition), at ECF 14; doc. no. 18-3 (Saenz Declaration), at 5, ¶ 12.  Rick Saenz is a Big Lots Human Resources employee.  **Note:** "ECF" is the acronym for "Electronic Case Filing," a system that allows parties to file and serve documents electronically.  *See Atterbury v. Foulk*, No. C-07-6256 MHP, 2009 WL 4723547, at *6 n.6 (N.D. Cal. Dec. 8, 2009).  Bluebook Rule 7.1.4 *permits* citations to the "page numbers generated by the ECF header."  *Wilson v. Fullwood*, 772 F. Supp. 2d 246, 257 n.5 (D. D.C. 2011) (citing *The Bluebook: A Uniform System of Citation* R. B. 7.1.4, at 21 (Columbia Law Review Ass'n *et al.*, 19th ed. 2010)).  Even so, *The Bluebook* recommends "against citation to ECF pagination in lieu of original pagination."  *Wilson*, 772 F. Supp. 2d at 257 n.5.  Thus, unless stated otherwise, this court will cite the original pagination in the parties' pleadings.  When the court cites to pagination generated by the ECF header, however, it will, as here, precede the page number with the acronym "ECF."

states have different requirements for anti-harassment policies. This policy does not apply where state law requires otherwise.

The Big Lots Harassment-Free Environment Policy complies with all local, state, and federal laws dealing with unlawful discrimination and/or harassment.

Each manager is responsible for maintaining a work environment that is free of harassment, both sexual and otherwise. This includes communicating this Policy to all associates and making sure that no one is subjected to insulting, degrading, or exploitative behavior.

Likewise, it's the responsibility of every associate to comply with this Policy and report any violations. Please be assured that you will not be penalized in any way for reporting inappropriate behavior. As per our Open Door Policy, honest two-way communication is essential to the successful operation of our business.

All reports of inappropriate conduct or discrimination will be promptly investigated under the direction of the Human Resources Department. All investigations will be conducted with the utmost concern for the confidential and personal nature of the allegation and with a high degree of sensitivity to the individuals involved. If you are found to have engaged in discriminatory or harassing behavior, you will receive Disciplinary Counseling up to and including termination of employment. Retaliation against anyone reporting acts of harassment will not be tolerated.

Doc. no. 18-3 (Saenz Declaration), at ECF 30 (January 2008 Associate Handbook).

The Policy also states that Big Lots has "zero tolerance" for any type of harassment, including sex-based harassment. The Policy defines harassment as including

unwelcome verbal, visual, or physical conduct creating an intimidating,

offensive, or hostile work environment that interferes with work performance. Harassment [also] can be verbal (including slurs, jokes, insults, epithets, gestures, or teasing), graphic (including offensive posters, symbols, cartoons, drawings, computer displays, or e-mails), or physical conduct (including physically threatening another, blocking someone's way, etc.) that denigrates or shows hostility or aversion toward an individual because of any protected characteristic. Such conduct violates this policy, even if it is not unlawful. Because it is difficult to define unlawful harassment, associates are expected to behave at all times in a professional and respectful manner.

*Id.* at ECF 31 (alteration supplied).

An employee who believes she has either been subjected to or observed any violation of the Harassment-Free Environment Policy is instructed to inform her Manager or the Regional Human Resources Manager. If the employee is not satisfied with the response at that level, she is directed to contact Big Lots' "Vice President of Associate Relations immediately or call the **GET REAL HOTLINE at 1.866.834.REAL (7325).**"[5] Employees also are advised that they can make a report to an appropriate government agency, including the United States Equal Employment Opportunity Commission ("EEOC").[6]

Plaintiff contends that W.C. Collinsworth, Assistant Manager of Operations at the Florence store, made sexually inappropriate comments to her for a majority of the

---

[5] Doc. no. 18-3 (Saenz Declaration), at ECF 31 (January 2008 Associate Handbook) (emphasis in original).

[6] *Id.*

5

time she worked there.[7]  Plaintiff never made any reports on the "Get Real Hotline,"

but she encouraged others to do so.[8]  Despite plaintiff's advice to other employees to

lodge complaints on the "Get Real Hotline," she complained to lower-level female

managers, such as Lisa Waters and Rhonda Simpson, and to the Store Manager, Gary

Pagan.[9]  Pagan always said that he would talk to Collinsworth, but "nothing ever got

done."[10]   In fact, plaintiff heard Pagan tell Wilson and Simpson, "Y'all are

management.  We're supposed to have each others back."[11]  According to plaintiff,

after she complained to Pagan, Collinsworth sometimes would tell her she took things

the wrong way, and then he would be "mean" to her for a few days:

> I mean, nothing I could do was right.  And he would holler at me
> in front of customers, me trying to run a register.  And the customers
> would stand there and say, "Why do you let him talk to you like that?"
> And I couldn't even say nothing.  It would embarrass me so bad. . . .
>
> But it wasn't like the sexual part of it.  It was where I felt like —
> like being at the register and him making — being ugly toward me, just
> hollering at me in front of the customers.  Belittling me, I guess I can
> say, in front of customers, just making me look stupid in front of
> customers after things would be said to him.  And that's the way it
> would go for a couple of days.

Doc. no. 18-1 (Plaintiff's Deposition), at 65, 96.  Collinsworth also would cut

---

[7] *See* doc. no. 18-1 (Plaintiff's Deposition), at 75-76.

[8] *Id.* at 35, 68.

[9] *Id.* at 49-50, 74-77.

[10] *Id.* at 76.

[11] *Id.* at 49-50.

plaintiff's hours after she complained, but Pagan always restored some of the hours during the week.[12]

In January 2012, plaintiff began performing inventory work in Big Lots stores other than Florence, and had limited interaction with Collinsworth.[13]  The last incident of sexually inappropriate conduct by Collinsworth that is asserted by plaintiff occurred in April 2012, when he allegedly brushed up against a female employee with his penis.[14]  Plaintiff was not a witness to that incident, but only heard about it later, and she did not make a complaint and was not present when an investigation occurred.[15]

Plaintiff suffered a neck injury while unloading trucks on August 10, 2012, and went on medical leave.[16]  Big Lots sent plaintiff a notice on August 16, 2012, advising her of the availability of FMLA leave, and informing her:  "If you are unable to return to work after twenty-six (26) weeks (consecutive or cumulative) of leave, your employment will be terminated due to your inability to return to work."[17]  Big

---

[12] *Id.* at 83-84.

[13] *Id.* at 47-48.

[14] *Id.* at 69-71.  *See* doc. no. 17 (Brief in Support of Summary Judgment), at 8, ¶¶ 29-30 (undisputed facts).

[15] Doc. no. 18-1 (Plaintiff's Deposition), at 69-72.

[16] *Id.* at 10-12.

[17] *Id.* at 19-22; doc. no. 18-3 (Saenz Declaration), at 4-5, ¶ 11; doc. no. 18-5 (Exhibits to Saenz Declaration), at ECF 14-15 (Exhibit 12).

Lots approved plaintiff's FMLA leave, and she exhausted her 12 weeks of statutory leave in November 2012.[18]

Plaintiff filed a Charge of Discrimination with the EEOC on November 5, 2012, asserting claims for sexual harassment, a hostile work environment, and retaliation under Title VII.[19]  Plaintiff stated the following in her EEOC charge:

> I was employed by Big Lots, Inc. in Florence, Alabama since November 2005 until present.  I am currently employed at the same store location as an ~~Associate Manager~~ stocker, cashier, furniture.  For approximately six months, Anthony Thomas has been the District Manager.  Prior thereto, Bruno Lijoi was the District Manager for over twenty years.  Gary Pagan has been the Store Manager for approx. nine years.  Wansfel Collinsworth (W.C.) is the Assistant Manager and sexual harasser.

> During my employment with Big Lots, W.C. has made comments about my breast and other inappropriate comments.  Such as, [*sic*] W.C. made the following comment to be [*sic*] regarding our required work uniform, "Are you sure you don't need a large for those big tits".  This comment was made in front of customers, while standing in the middle of the store.  The comment was very embarrassing to me.  The same kind of comments were made when I would be in the office counting my til or working in the warehouse.  W.C. always talked about his sex life and things he had done with women when he went on his trips to China and other places.  I cannot give specific dates or times that these were made because it happened all the time, every [*sic*] since I first started working there.

> At times, I felt like I was retaliated against by W.C. because when I complained to Gary Pagan about W.C.'s behavior, W.C. would not talk

---

[18] Doc. no. 18-3 (Saenz Declaration), at 5, ¶ 12.

[19] Doc. no. 18-2 (Exhibits to Plaintiff's Deposition), at ECF 14-15.

to me, was rude and loud to me in front of customers or other associates, to the point that I would be in tears, which made my job difficult to perform.   Other Associates, Nikki, Heather, Gina, and the other Assistant Manager, Lisa Wilson, have heard him make sexual comments and talk in a sexually provocative manner.

On other occasions while working, I have had other Associates, Victoria Kelley, Amanda ?, Audra ?, and others that I can't remember their names, come to me and tell me that he was making them very uncomfortable by hugging on them and rubbing on them or making sexual comments to them and asked me what they should do.  I always told them they needed to complain to Gary Pagan.  Gary would call W.C. in the office and talk to him and it would stop for a couple of days and then it would go back to being the same as it was before, with the comments and making you uncomfortable to work with W.C.  I've seen many associates quit or find another job because of W.C.  We were always told that W.C.'s actions would be taken care of, but nothing was ever done to stop his behavior.  I have made it clear to all the Managers that I did not want to work with W.C.

During my tenure at Big Lots, I have been subjected to sexually provocative stories, sexual jokes, lewd gestures and unwanted physical contact from W.C.  I am continuously sexually harassed and made to work in a hostile work environment.

To my knowledge W.C. has not been disciplined.  The harassment by W.C. and management's unwillingness to investigate my complaints has forced me to endure harassment and retaliation.  I feel that I have been sexually harassed and retaliated against in violation of the Title VII of the Civil Rights Act of 1964, as amended.

Doc. no. 18-2 (Exhibits to Plaintiff's Deposition), at ECF 14-15 (Exhibit 9) (strike-

through in original, alterations supplied).

Plaintiff's workers' compensation physician released her to return to regular

work as of February 4, 2013.[20]  Plaintiff worked for a few hours on February 10, 2013, but left work before the end of her scheduled shift due to pain, and never returned to work again.[21]  Her 26 weeks of available leave ended during the week of February 12, 2013.[22]  Thereafter, she sent a note from her personal physician dated February 13, 2013, advising that she would be out from work for an unspecified reason until April 1, 2013.[23]  Big Lots terminated plaintiff's employment effective February 19, 2013.[24]  Pagan telephoned plaintiff to inform her of her termination, and he advised her that she was welcome to re-apply for employment when her physician released her to return to work.[25]  Plaintiff never sought re-employment and now contends that she is totally disabled.[26]

Plaintiff and her husband filed a petition for Chapter 7 Bankruptcy in the United States Bankruptcy Court for the Northern District of Alabama on March 27, 2013.[27]  Plaintiff did not disclose the existence of her EEOC charge in her petition or

---

[20] Doc. no. 18-5 (Exhibits to Saenz Declaration), at ECF 16 (Exhibit 13).

[21] Doc. no. 18-3 (Saenz Declaration), at 5, ¶ 12.  Saenz asserted in his deposition that plaintiff worked for a few hours on February 10, *2012*.  However, it is clear, given the context of the statement, that he meant to state she worked for a few hours on February 10, *2013*.

[22] *Id.*

[23] Doc. no. 18-5 (Exhibits to Saenz Declaration), at ECF 17 (Exhibit 14).

[24] Doc. no. 18-3 (Saenz Declaration), at 5, ¶ 12.

[25] Doc. no. 18-1 (Plaintiff's Deposition), at 12-13, 86-88.

[26] *Id.* at 10, 21.

[27] *See* doc. no. 18-6 (Bankruptcy File Part 1), at ECF 3, 11.

its attached schedules.[28]  In response to the request for identification of "Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims," plaintiff responded: "Workmen's Compensation case for Mrs. Keeton, Workman's Comp only."[29]  In response to a request to list "all suits *and administrative proceedings* to which the debtor is or was a party within **one year** immediately preceding the filing of this bankruptcy case," plaintiff marked the box labeled "None," and declared this statement true under penalty of perjury.[30]  Plaintiff also submitted a "Declaration Concerning Debtor's Schedules," in which she also represented, under penalty of perjury, that "I have read the foregoing summary and schedules, consisting of 17 sheets, and  that they are true and correct to the best of my knowledge, information, and belief."[31]

On April 30, 2013, the trustee of the bankruptcy estate reported that "there is no property available for distribution from the estate over and above that exempted by law."[32]

Plaintiff, accompanied by three co-employees, filed a joint lawsuit against Big

---

[28] *See id.* at ECF 11-38.

[29] *Id.* at ECF 20.

[30] *Id.* at ECF 35, 38 (italicized emphasis supplied, boldface emphasis in original).

[31] *Id.* at ECF 33.

[32] *Id.* at ECF 6.

Lots on May 28, 2013, asserting claims under Title VII.  The claims of each plaintiff were subsequently severed by this court.[33]

On June 26, 2013, the Bankruptcy Court entered an order discharging plaintiff, resulting in $73,636.35 in debt relief.[34]  Plaintiff never amended her bankruptcy filings to disclose her claims in this litigation.[35]

## III.  DISCUSSION

### A.   Sexual Harassment/Hostile Work Environment

Plaintiff's second amended complaint asserted separate claims for "sexual harassment" and "hostile work environment" under Title VII.[36]  Because plaintiff has not alleged that she suffered a tangible adverse employment action as a result of Collingsworth's sexual harassment, there is no actual distinction between the two claims.  *See Pipkins v. City of Temple Terrace, Fla*., 267 F.3d 1197, 1200 n.3 (11th Cir. 2001) ("Generally, sexual harassment claims are argued as either hostile work environment claims or *quid pro quo* claims.  The difference between the two is that the former do not result in tangible employment actions, while the latter do.") (citing *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 760-63 (1998)).

---

[33] *See* doc. no. 1 (Order from Prior Action Severing Case).

[34] *See* doc. no. 18-6 (Bankruptcy File Part 1), at ECF 6; doc. no. 18-8 (Bankruptcy File Part 3), at ECF 44.

[35] *See* doc. no. 18-9 (Bankruptcy Docket Sheet as of August 27, 2014).

[36] *See* doc. no. 9 (Second Amended Complaint), at Counts One and Two.

A plaintiff must satisfy a number of administrative prerequisites before filing a suit based upon Title VII.  Foremost among these is the requirement that a charge of discrimination be submitted to the Equal Employment Opportunity Commission within 180 days "after the alleged unlawful employment practice occurred."  42 U.S.C. § 2000e-5(e)(1).   In hostile work environment cases, however, the claim can be timely even if the first instance of harassment "occurred" more than 180 days before the charge was filed.  The Supreme Court has recognized that a hostile work environment claim based upon racial or sexual harassment "is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002) (quoting 42 U.S.C. § 2000e-5(e)(1)).  For that reason, "[a] charge alleging a hostile work environment claim . . . will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice *and at least one act falls within the* [*180 day*] *time period*." *Id*. at 122 (alterations and emphasis supplied).

Big Lots asserts that plaintiff was not subjected to harassing conduct within the 180-day period that preceded the date on which plaintiff filed her EEOC charge: *i.e.*, on or after May 9, 2012.[37]  Plaintiff did not respond to that contention.  Even so, this court cannot enter summary judgment by default.  The Eleventh Circuit has observed

---

[37] Doc. no. 17 (Brief in Support of Summary Judgment), at 17.

that a

> "district court cannot base the entry of summary judgment on the mere
> fact that the motion was unopposed but, rather, must consider the merits
> of the motion." [*United States v. One Piece of Real Property Located at
> 5800 SW 74th Ave.*, 363 F.3d 1099,] 1101 [(11th Cir. 2004)]. . . . Fed.
> R. Civ. P. 56(e) provides that where "'the adverse party does not
> respond, summary judgment, *if appropriate,* shall be entered against the
> adverse party.'" *Id.* at 1101 (quoting Fed. R. Civ. P. 56(e)) (emphasis
> in the original).

*Trustees of the Central Pension Fund of the International Union of Operating Engineers and Participating Employers v. Wolf Crane Service, Inc.*, 374 F.3d 1035, 1039 (11th Cir. 2004) (alterations supplied).

Upon consideration of the merits of the motion, this court agrees with Big Lots. All of the allegedly harassing acts about which plaintiff complains occurred outside the 180-day period before plaintiff filed her EEOC Charge. Indeed, it is undisputed that the last incident of inappropriate behavior against plaintiff by Collinsworth occurred, at the latest, during April of 2012.[38] Accordingly, plaintiff's hostile work environment and sexual harassment claims are barred on timeliness grounds.

## B.   Retaliation

"Retaliation is a separate violation of Title VII." *Gupta v. Florida Board of Regents,* 212 F.3d 571, 586 (11th Cir. 2000). A plaintiff generally must prove three

---

[38] *See* doc. no. 17 (Brief in Support of Summary Judgment), at 8, ¶¶ 22-23, 29-30 (undisputed facts).

elements to establish a *prima facie* case of retaliation:  (1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) there was a causal linkage between the protected conduct and the adverse employment action.  *See, e.g., Shannon v. BellSouth Telecommunications, Inc.*, 292 F.3d 712, 715 (11th Cir. 2002).

> Once plaintiff establishes a prima facie case [of retaliation] by proving only that the protected activity and the negative employment action are not completely unrelated, the burden shifts to the defendant to proffer a legitimate reason for the adverse action . . . .  The burden then shifts back to the plaintiff to prove by a preponderance of the evidence that the "legitimate" reason is merely pretext for prohibited, retaliatory conduct.

*Sierminski v. Transouth Financial Corporation*, 216 F.3d 945, 950 (11th Cir. 2000) (citations omitted) (alteration supplied).

Plaintiff first asserts that Collinsworth retaliated against her by cutting her hours, scrutinizing her work, shouting at her in the presence of customers, and generally treating her "downright ugly."[39]  Big Lots contends that there is no evidence those acts occurred within the 180-day period before plaintiff filed her EEOC

---

[39] Doc. no. 22 (Opposition to Summary Judgment), at 24.  The court is skeptical that all of Collinsworth's acts actually constitute "adverse employment actions."  *See Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 68 (2006) (to be an "adverse employment action," an employee "must show that a reasonable employee would have found the challenged action materially adverse").  Many of Collinsworth's acts appear to fall in the "trivial harm" category of conduct that the Supreme Court cautioned lower courts to refrain from finding materially adverse.  *Id.* (it is "important to separate significant from trivial harms" in determining material adversity).

charge.[40]   Plaintiff neither responded to Big Lots' contention, nor identified any

retaliatory acts occurring within the 180-day period.  Indeed, plaintiff admits that she

had limited interaction with Collinsworth after January of 2012, and that the last

incident of inappropriate conduct by Collinsworth occurred in April of 2012.[41]

Further, Collinsworth's retaliatory behavior lasted for, at most, a week after plaintiff

complained about his inappropriate conduct, and it is undisputed that plaintiff did not

witness the April 2012 incident, or complain about it.[42]  Thus, Collinsworth could not

have retaliated against plaintiff during the 180-day period (*i.e.*, on or after May 9,

2012).  Accordingly, plaintiff's retaliation claims based upon Collinsworth's actions

are also barred on timeliness grounds.[43]

Plaintiff next asserts that she was fired in retaliation for her EEOC charge.[44]

Even if plaintiff could establish a *prima facie* case,[45] Big Lots has articulated a

---

[40] Doc. no. 17 (Brief in Support of Summary Judgment), at 28.

[41] Doc. no. 18-1 (Plaintiff's Deposition), at 47-48, 69-72.

[42] *Id.* at 65, 69-71.

[43] Big Lots also contends that plaintiff's retaliation claim exceeds the scope of her EEOC charge based upon Collinsworth's act of cutting her hours.  *See* doc. no. 17 (Brief in Support of Summary Judgment), at 28. Plaintiff again offers no response to that contention.  Indeed, "a plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination."  *Gregory v. Department of Human Resources*, 355 F.3d 1277, 1280 (11th Cir. 2004) (internal quotes omitted).  The court hesitates to entertain that argument, however, because it need not bar plaintiff's claims as long as facts are reasonably present in the charge for the EEOC to conduct an investigation.  *Id.*

[44] Doc. no. 22 (Opposition to Summary Judgment), at 24.

[45] Although the court is skeptical that plaintiff could establish a causal connection between her EEOC charge and her termination, *see Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364

legitimate, non-retaliatory reason for terminating her employment: *i.e.,* that plaintiff advised Big Lots she would be out from work for some unspecified reason for over six weeks after exhausting all available leave.[46]  Thus, plaintiff can survive summary judgment on her retaliation claim only if she comes "forward with evidence, including the previously produced evidence establishing the *prima facie* case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision."  *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997).  Plaintiff's burden at this step of the analysis is that of "cast[ing] sufficient doubt on the defendants' proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered 'legitimate reasons were not what actually motivated its conduct . . . .'"  *Combs*, 106 F.3d at 1538 (quoting *Cooper-Houston v. Southern Railway Co.*, 37 F.3d 603, 605 (11th Cir. 1994)) (alteration supplied); *see also Chapman*, 229 F.3d at 1024-25.  Plaintiff shoulders that burden by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence."  *Combs*, 106 F.3d at 1538 (quoting *Sheridan v. E.I. DuPont*

---

(11th Cir. 2007)  (a three month disparity between protected activity and an adverse action is not sufficient, by itself, to establish a causal connection), Big Lots does not contend that plaintiff failed to establish her *prima facie* case of retaliation based upon her termination.

[46] Doc. no. 18-3 (Saenz Declaration), at 5, ¶ 12.

*de Nemours & Company*, 100 F.3d 1061, 1072 (3d Cir. 1996)) (internal quotation marks omitted).   Additionally, a plaintiff must produce "sufficient evidence to demonstrate the existence of a genuine issue of fact as to the truth of *each* of the employer's proffered reasons for its challenged action." *Combs,* 106 F.3d at 1529 (emphasis supplied).

Plaintiff has offered no reason why Big Lots' proffered legitimate reason should be discredited.   Instead, she states only that "Gary Pagan advised [her] in February, 2013, after she had worked only a couple [of] hours[,] that she was being fired and that the decision came from Human Resources."[47]   The record, however, does not support that assertion.   In fact, the record *establishes* that plaintiff left the Florence store early on February 10, 2013, because she was in pain, and that Pagan called her *several days later* (after she informed Big Lots that she would be absent for another month and a half) to inform her that she was terminated.[48]   It is undisputed that plaintiff never re-applied for her position, and that she exhausted her administrative leave.[49]   Accordingly, the court is not persuaded that Big Lots' reason for terminating plaintiff was pretextual.

## C.    Judicial Estoppel

---

[47] Doc. no. 22 (Opposition to Summary Judgment), at 24 (alterations supplied).

[48] *Id.* at 12-13.

[49] *Id.* at 10, 21; doc. no. 18-3 (Saenz Declaration), at 5, ¶ 12.

Even if plaintiff could otherwise establish her claims, Big Lots contends that they are barred by the doctrine of judicial estoppel because she failed to disclose them in her bankruptcy proceeding.[50]   Plaintiff never responded to that contention.[51]

"Judicial estoppel is an equitable doctrine invoked at a court's discretion." *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1285 (11th Cir. 2002).   Under the doctrine, a party is precluded from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding.  *Id.*  "The purpose of the doctrine, 'is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment.'"  *Id.* (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001)).   The Eleventh Circuit has limited the application of judicial estoppel to claims for monetary relief and allowed the debtor's undisclosed claims for injunctive relief to proceed because such a claim generally will not add value to the bankruptcy estate even if properly disclosed.  *See id.* at 1288-89.

In the Eleventh Circuit, courts consider two factors to determine whether judicial estoppel applies to a particular case: "First, it must be shown that the allegedly inconsistent positions were made under oath in a prior proceeding.  Second,

---

[50] Doc. no. 17 (Brief in Support of Summary Judgment), at 11.

[51] *See* doc. no. 22 (Opposition to Summary Judgment).

such inconsistencies must be shown to have been calculated to make a mockery of the judicial system." *Id.* (quotations omitted).

The Eleventh Circuit has applied the doctrine of judicial estoppel on numerous occasions to affirm grants of summary judgment against plaintiffs pursuing employment discrimination claims that were not disclosed in bankruptcy. *See, e.g., Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269 (11th Cir. 2010); *Barger v. City of Cartersville*, 348 F.3d 1289 (11th Cir. 2003); *De Leon v. Comcar Indus., Inc.*, 321 F.3d 1289 (11th Cir. 2003); *Burnes*, 291 F.3d at 1285. *See also*, *e.g.*, *Casanova v. PRE Solutions, Inc.*, 228 F. App'x 837 (11th Cir. 2007).

In this case, plaintiff was under a duty to disclose her EEOC charge to the Bankruptcy Court.  As one Eleventh Circuit panel has explained in an unreported opinion that this court finds persuasive:

> Even though Plaintiff did not file a *lawsuit* before or during the pendency of his bankruptcy petition, the pending EEOC charges constitute "administrative proceedings" and "[o]ther contingent and unliquidated claims" that Plaintiff was required to disclose on his SFA. The "property of bankruptcy estate includes all *potential* causes of action existing at time petitioner files for bankruptcy."

*Casanova*, 228 F. App'x at 841 (emphasis and alteration in original) (quoting *Barger*, 348 F.3d at 1292).  Plaintiff's "failure to timely amend [her bankruptcy petition] to reflect [her] pending claim[s] while simultaneously pursuing th[ose] claim[s] in

another court of law constitutes inconsistent positions under oath." *Robinson*, 595

F.3d at 1275 (alterations supplied) (citing *Ajaka v. BrooksAmerica Mortg. Corp.*, 453

F.3d 1339, 1344 (11th Cir. 2006)).  *See also Burnes*, 291 F.3d at 1286.

In light of the inconsistent positions taken by plaintiff, the court must

determine whether she *intentionally* misled the Bankruptcy Court.  *See Burnes*, 291

F.3d at 1286 ("the doctrine of judicial estoppel applies in situations involving

intentional contradictions, not simple error or inadvertence").  A "debtor's failure to

satisfy its statutory disclosure duty is 'inadvertent' only when, in general, the debtor

either lacks knowledge of the undisclosed claims or has no motive for their

concealment." *Id.* at 1287 (quoting *In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th

Cir. 1999)).

In this case, plaintiff clearly had knowledge of her employment discrimination

claims because she filed her EEOC charge in November 2012, her petition for

bankruptcy in March 2013, and this lawsuit in May 2013.  Further, plaintiff had

motives to conceal her EEOC claims from the bankruptcy court: to receive a "no

asset" discharge of her debts; and, to keep any proceeds from the discrimination

lawsuit for herself.  Thus, the court infers that plaintiff intended to manipulate the

judicial system.

Accordingly, plaintiff's employment discrimination claims against Big Lots for

monetary damages also are barred by the doctrine of judicial estoppel.

## IV.  CONCLUSION

In accordance with the foregoing, it is ORDERED that defendant's motion for summary judgment is GRANTED.  Plaintiff's claims are DISMISSED with prejudice. Costs are taxed against plaintiff.  The Clerk is DIRECTED to close this file.

DONE and ORDERED this 7th day of January, 2015.

_____

United States District Judge

22